# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MURRAY ENERGY CORPORATION, et al.,**

    **Plaintiffs,**

    v.

**CASSIDY, COGAN, CHAPPELL AND VOEGELIN, L.C., et al.,**

    **Defendants.**

Civil Action 2:18-cv-440
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Jolson

## OPINION AND ORDER

At the heart of this matter is a dispute over privileged information. Plaintiffs Murray Energy Corporation, Robert E. Murray, and Murray American Energy, Inc. (collectively, the "Murray Parties"), request that this Court compel Defendants Cassidy, Cogan, Chappell and Voegelin, L.C. and Patrick Cassidy to produce privileged communications with the goal of establishing violations of various state laws. (Doc. 23). For the reasons that follow, Plaintiffs' Motion to Compel is **DENIED**.

## I. BACKGROUND

### A. Facts and Prior Proceedings

Plaintiff Murray Energy Corporation is the nation's largest privately-owned coal company,[1] and Plaintiff Robert Murray ("Mr. Murray") is its Chairman, President and Chief Executive Officer. (Doc. 13, ¶ 2). Plaintiffs Murray American Energy, Inc. and the Ohio Valley Coal Company are subsidiaries of Murray Energy Corporation. (*Id.*, ¶¶ 3–4). On the other side of

---

[1] Murray Energy Corporation, Corporate Overview (last visited March 27, 2019), http://www.murrayenergycorp.com/corporate-overview/.

this case, Defendant Patrick Cassidy ("Mr. Cassidy") is an attorney and serves as president of Defendant Cassidy, Cogan, Shapell, and Voegelin, L.C. (the "Cassidy Firm").[2] This case also involves non-parties, Denise Zombotti ("Ms. Zombotti"), Denise Jackson ("Ms. Jackson"), and Teelea Nii ("Ms. Nii"), all of whom worked for the corporate Murray Parties at some point in time. (Doc. 13, ¶ 12; Doc. 13-1 at 14–21). Each woman alleges that, while working for the corporate Murray Parties, they endured a hostile work environment. (*See id.*). As a result of this mistreatment, they sought legal representation from the Cassidy Firm—Ms. Zombotti and Ms. Jackson in 2014 and Ms. Nii in 2016. (Doc. 13., ¶¶ 15, 17; Doc. 13-1 at 2–4). In 2014, on behalf of Ms. Zombotti and Ms. Jackson, the Cassidy Firm negotiated confidential settlement agreements with Plaintiffs. (Doc. 13., ¶¶ 15, 17). And, in December 2016, the Cassidy Firm filed suit on behalf of Ms. Nii in the Belmont County Court of Common Pleas. (Doc. 13-1 at 14–21).

The catalyst for the action before this Court was a December 2016 letter the Cassidy Firm sent Plaintiffs. (*See generally* Doc. 23). In the letter, Mr. Cassidy informed Defendants that he represented Ms. Nii, and then went on to make reference to other claims made against Mr. Murray in the past. (Doc. 13-1 2–4). Specifically, Mr. Cassidy wrote, "[f]or my part, I am rather surprised that your clients have not taken any effective action to keep Mr. Murray from sexually harassing his female employees, particularly where they have had knowledge of prior claims made by other women against Mr. Murray (which we think would be admissible as relevant evidence in any claim brought by Ms. Nii.)." (*Id.* at 2).

The Cassidy Firm sent Plaintiffs a second letter on March 9, 2017, stating their intention to depose Mr. Murray. (*Id.* at 23–25). In the letter, Mr. Cassidy asserted that they would be attempting to discover information "only about [Mr. Murray's] long-time treatment of women in

---

[2] Cassidy, Cogan, Shapell, and Voegelin, L.C., *Attorney Profiles* (last visited March 27, 2019), http://walslaw.com/attorney-profiles/cassidy/.

the workplace, and maintenance over many years of a hostile work environment based on gender that all of his principal businesses either knew about, or should have known about." (*Id.* at 24). Continuing, Mr. Cassidy stated that they "believe that [Mr. Murray] will be required to testify truthfully about former claims about him . . . by former clients of mine (Ms. Jackson and Ms. Zombotti), notwithstanding Mr. Murray having entered into Confidential Settlement Agreements with each of them[.]" (*Id.* at 24–25).

Based on the content of these letters, Plaintiffs believe that Defendants breached the confidential settlement agreements. In particular, Plaintiffs allege that Defendants breached the specific provision, wherein Ms. Zombotti and Ms. Jackson, respectively, agreed to "keep all terms of [the] Agreement completely confidential" and further agreed not to "disclose any information concerning her claim or this Agreement to any person, including, but not limited to, any past, present, or prospective employee of the Releases[.]" (Doc. 14 at 5 (citing Ex. A at ¶ 9(b); Ex. B at ¶ 9(b))). Plaintiffs argue that by noting Ms. Zombotti's and Ms. Jackson's claims against Mr. Murray, Defendants intentionally placed privileged information at issue by using it "offensively in furtherance of Ms. Nii's claims." (Doc. 23-1 at 18). Essentially, Plaintiffs accuse Defendants of using privilege as both a sword and a shield.

Pursuant to this alleged breach, Plaintiffs filed a Complaint (Doc. 1-2) in the Belmont County Court of Common Pleas on April 10, 2017. Defendants removed the action to this Court the following month. (*See* Doc. 1). Generally, Plaintiffs bring contract, quasi-contract, and legal malpractice claims against Defendants. (Doc. 31 at 2).

### B. The Pending Motion to Compel (Doc. 23)

When viewed at a high level, the parties' arguments are simple. Plaintiffs believe that Defendants breached the terms of the confidential settlement agreements to advance the interests

3

of their client, Ms. Nii. Based on that belief, Plaintiffs served sweeping discovery requests on Defendants, seeking, inter alia, Defendants' confidential client case files and information related to Defendants' representation of former clients. Plaintiffs, in their supplemental brief, present the "overarching issues" they seek to discover:

> (a) What was the scope of information Defendants shared with Nii (beyond that currently known);
> (b) What did Defendant Cassidy consider before sharing this information (if anything);
> (c) Did he discuss (in advance) the disclosure with either Jackson or Zombotti and what was the substance of those discussions; and
> (d) For what purpose(s) was the information shared and used by Defendants.

(Doc. 31 at 4).

To resolve these issues, Plaintiffs seek, for example, the "[d]ate of all communications with Nii [as well as with Ms. Jackson and Ms. Zombotti] (whether verbal or written) from October 2014-present, and for each, who was present and t/or who participated"; the production of all documents or recordings "concerning any communications" referenced in those communications; the production of "all communications between either Defendant and Denise Jackson and/or Denise Zombotti following execution of their confidential settlement agreements." (*Id*. at 4, 8–9).

Unsurprisingly, Defendants objected to much of this discovery on the basis of privilege. (*See generally* Docs. 28, 33). According to Plaintiffs, however, privilege has been waived, and moreover, the crime-fraud exception to the attorney-client privilege compels disclosure of the privileged documents. (*See generally* Docs. 23, 29, 31). This matter is fully briefed and ripe for review.

## II. STANDARD

Determining the proper scope of discovery falls within the broad discretion of the trial court. *See Lewis v. ACD Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Pursuant to Rule

4

26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Moreover, Rule 37 of the Federal Rules of Civil Procedure allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

Importantly, while Plaintiffs seem to question the privileged nature of the discovery (*see, e.g.*, Doc. 29 at 7–8), they do not argue—or provide supporting case law—that the requested discovery is not subject to the attorney-client privilege. Rather, they argue that the material is discoverable based on waiver or the crime-fraud exception. Separate standards apply to Plaintiffs' two bases for piercing the privilege.

Subject-Matter Waiver: Because this case is before the Court pursuant to its diversity jurisdiction, Ohio law governs the applicability of the attorney-client privilege. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-cv-116, 2012 WL 3731483, at *1 (S.D. Ohio Aug. 28, 2012) (citing Fed. R. Evid. 501). As to the question of waiver, however, federal law controls. *See Burnett v. Ford Moto Co.*, No. 3:13-cv-14207, 2015 WL 1650439, at *6 (S.D. W. Va. Apr. 14, 2015) ("While the applicability of the privilege is governed by state law, waiver of the privilege is a matter of federal law."); Fed. R. Evid. 502(f).

The attorney-client privilege is fundamental to the functioning of our legal system. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006). Accordingly, applying subject-matter waiver so that a party may access privileged material is an extraordinary measure. *See* Fed. R. Evid. 502 (a) advisory committee's note (noting that subject-matter waiver is limited to "unusual situations").

The central inquiry to the question of subject-matter waiver is that of fairness. In light of that policy, in the rare occasion where "a party discloses part of an otherwise privileged communication, he must in fairness disclose the entire communication, or at least so much of it as will make the disclosure complete and not misleadingly one-sided." *United States v. Skeddle*, 989 F. Supp. 905, 918 (N.D. Ohio 1997) (citing *Teachers Ins. and Annuity Ass'n of Am. v. Shamrock Broad. Co.*, 521 F. Supp. 638, 641 (S.D.N.Y. 1981)). Courts also "examine whether there has been a disclosure of a 'significant part' of a privileged communication to determine if the privilege, in fact, has been waived." *Yarberry v. Gregg Appliances, Inc.*, No. 1:12-cv-611, 2013 WL 4476681, at *3 (S.D. Ohio Aug. 19, 2013).

Even if subject-matter waiver applies, the scope of that waiver is not unlimited. *See United States* v. *Collis*, 128 F.3d 313, 320 (6th Cir. 1997). "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." *Id*. And, because "fairness is at the 'heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly.'" *Liang v. AWG Remarketing, Inc.*, No. 2:14-cv- 0099, 2015 WL 8958884, at *5 (S.D. Ohio Dec. 16, 2015) (quoting *Skeddle*, 989 F. Supp. at 909 n.2).

<u>Crime-Fraud Exception</u>: State law governs the applicability of the crime-fraud exception to the attorney-client privilege. *See Safety Today, Inc. v. Roy*, No. 2:12-CV-510, 2014 WL 12750617, at *3 (S.D. Ohio May 16, 2014) ("The scope of the crime-fraud exception is a matter of state law.").

"The Ohio Supreme Court has held that the attorney-client privilege does not attach to conversations with clients that relate to some future unlawful or fraudulent transaction." *Lytle v. Matthew*, 89 N.E.3d 199, 205 (Ohio 2018) (quotation mark and citation omitted). "This crime-

6

fraud exception is established by demonstrating that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." *Id.* (citing *State ex rel. Nix v. Cleveland*, 700 N.E.2d 12 16 (Ohio 1998)). "Following that standard, courts have required the privilege challenger to present evidence: (1) that the client was engag[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2013 WL 5597065, at *6 (S.D. Ohio Oct. 11, 2013), *objections overruled*, No. 2:123-cv-510, 2014 WL 12750617 (S.D. Ohio May 16, 2014) (quotation marks and citation omitted) (alteration in original).

When applying the above test, courts focus on the client's alleged misconduct. *See, e.g.*, *id.* at *7. This makes sense when considering the purpose of the attorney-client privilege. Indeed, the policies of candor and confidentiality are "extinguished when a client desires to obtain legal advice . . . for purposes of planning a future wrongdoing." *Am. Mun. Power, Inc.*, 2012 WL 609357, at *2 (citing *United States v. Zolin*, 491 U.S. 554, 563–64 (1989)). "The crime-fraud exception to the privilege arises to assure that the 'seal of secrecy' between a lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud or crime.'" *Id.* (quoting *Zolin*, 491 U.S. at 563); *see also Lytle*, 89 N.E.3d at 205 (noting that advice sought in furtherance of a crime or fraud "is not worthy of protection").

### III. DISCUSSION

As noted, Plaintiffs allege that the attorney-client privilege does not protect the discovery from disclosure because: (1) Defendants have waived any applicable privilege, and (2) the crime-

7

fraud exception to the attorney-client privilege applies to this case. (*See generally* Docs. 23, 28, 31). The Court will consider Plaintiffs' arguments in turn.

**A. Waiver**

Plaintiffs raise two primary waiver arguments. First, they assert that Mr. Cassidy, in his firm's letters to Plaintiffs, "voluntarily disclosed" privileged information to Ms. Nii, a third party, thereby waiving privilege. (Doc. 23-1 at 10–11). Second, Plaintiffs contend that, at his deposition, Mr. Cassidy testified about privileged information and therefore waived privilege. (*Id*. at 9–10).

*1. Deposition Testimony*

The Court turns first to Plaintiffs' argument that the Court should apply waiver based on the deposition testimony in this case. (*See* Doc. 23-1 at 8–13). Plaintiffs first assert that Mr. Cassidy waived privilege at his deposition, or in the alternative, that Ms. Zombotti, Ms. Jackson, and Ms. Nii each waived privilege at their respective depositions. (*See* Doc. 23-1 at 8–13). Here is the relevant testimony:

> Ms. Jackson's Deposition Testimony:
>
> Q. Did you give him [Mr. Cassidy] permission to talk about your claims?
>
> A. I- repeat that.
>
> Q. Did you give Mr. Cassidy permission to discuss your claims with anyone else?
>
> > Mr. Colantonio: Object to the form.
>
> A. I – that was never asked from me. I have no idea how I would even answer that.
>
> Q. So no one – Mr. Cassidy never said to you, "Ms. Jackson, I want to talk about you or your situation with someone else?"
>
> A. No.

(Doc. 23-5 at 8).

8

Ms. Zombotti's Deposition Testimony:

Q. Did you give permission for your information to be part of this March 9th letter?

    Mr. Colantonio: Object to the form.

    Mr. Schrader: Me too.

A. I don't know anything about this letter

    * * * *

Q. Have you ever discussed with Mr. Cassidy the topic of giving him permission to use information he learned from you during the course of his representation with you?
    Mr. Colantonio: object to the form of the question.

A. I don't recall.

(Doc. 23-6 at 5, 10).

Ms. Nii's Deposition Testimony:

Q. Ma'am, do you understand that this letter was saying there were prior claims made?

    Mr. Schrader: Object to form.

Q. You can answer.

    Mr. Schrader: You can answer the question.

A. I did not read it like that.

Q. How did you read it?

A. That there were other people that worked for Murray that had the same type of events happen to them during their employment.

Q. Was that a topic you discussed with Mr. Cassidy?

    Mr. Cassidy: I'm going to object. Attorney-client privilege.

    * * *

> Q. The sole basis, and the basis for Mr. Cassidy's objection, is that the source of all information regarding these confidential settlement agreements referenced in this March 9, 2017 letter was any communication with counsel?
>
> A. Are you saying did I communicate with him about this? I'm confused by your question.
>
> Q. Sure. And that's fair. You can tell me that. I told you to tell me that at the beginning. Let's try it again. This was not information you had independent of any communication you had with Mr. Cassidy?
>
> A. Correct. I didn't know anything about this.

(Doc. 23-8 at 9–10).

Plaintiffs, relying on the above testimony, aver that Mr. Cassidy's former clients "freely testified under oath regarding Mr. Cassidy's actions and communications in representing them." (Doc. 23-1 at 13). The Court finds one significant problem with Plaintiffs' argument. Namely, the attorney-client privilege is not Mr. Cassidy's to waive.[3] *See Baumgardner v. Louisiana Binding Serv., Inc*, No. 1:11-CV-794, 2013 WL 765574, at *6 (S.D. Ohio Feb. 28, 2013). Indeed, Plaintiffs may discover privileged material only if the Court finds that Mr. Cassidy's *clients* voluntarily testified about privileged matters, thereby waiving privilege. *See id.* (noting that "an attorney may not testify about privileged communications made by a client to the attorney unless the client waives the privilege by voluntarily testifying, under which circumstances the attorney may be compelled to testify on the same subject."). And, even if the Court concludes that Mr. Cassidy's clients waived privilege, the Court must still determine whether fundamental fairness requires piercing the privilege. *See* Fed. R. Evid. 502(a) advisory committee's note (citing *In re*

---

[3] Plaintiffs argue that Mr. Cassidy, as his clients' agent, may waive privilege on their behalf. (*See* Doc. 29 at 5). However, the agency exception applies only if the lawyer, while "acting within the parameters of the legal assistance or representation that the client sought," has "the implied authority to make representations and disclosures to third parties," and thereby waives the client's privilege. 2 Kevin T. Barnett et al., Attorney-Client Privilege in the United States § 9:2 (2018). Defendants do not make this argument, nor does the Court find that this exception applies to the facts of this case.

*United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. at 312); *Skeddle*, 989 F. Supp. at 918.

In determining whether Mr. Cassidy's clients voluntarily testified at their depositions, the Court "must consider the facts of the case before it, specifically the questions and answers from the deposition, and then decide if the testimony concerning the relevant information was voluntary." *Id.* at *7 (quotation marks and citation omitted). Generally, "mere responses to questions on cross-examination cannot constitute waiver of the privilege." *Avis Rent a Car Sys., LLC v. City of Dayton, Ohio*, 2013 WL 3778922, at *6 (S.D. Ohio July 18, 2013). Similarly, "in the deposition context . . . simply identifying the general subject matter of the communication will not serve to waive the attorney-client privilege." *Liang*, 2015 WL 895884, at *6. Rather, waiver typically applies in cases where the client "expressly testified about the substance of her communication" with her attorney and where that testimony revealed counsel's "strategy and reasoning." *See id.* at *7. Finally, the Court must "consider whether any objections based on the attorney-client privilege were interposed during the relevant questioning or whether the deponent refused to answer any questions about the communications in question." *Id.*

This Court's analysis in *Liang v. AWG Remarketing, Inc.* is particularly helpful to the question of voluntariness. *See* 2015 WL 895884, at *6–10. Applying the factors above, the Court parsed the relevant deposition testimony. There, the Court found voluntary disclosure where the plaintiff "expressly testified about the substance of her communication with [her attorney]" and "disclose[d] [the attorney's] strategy and reasoning." *Id.* at *7. However, the Court declined to find voluntary disclosure where counsel testified that she "was 'okay with [ ] [the plaintiff] talking about conversations with [her] previous counsel,'" and noted that the plaintiff's counsel "permitted her to testify only as to the date on which [the plaintiff] learned of a dismissal document." *Id.*

11

Similarly, the Court declined to find voluntary disclosure as to the plaintiff's testimony that she "did not know what counsel was doing," finding that "this testimony does not reveal actual substance of [the plaintiff's] communications with [counsel] and therefore does not operate as a waiver of the privilege." *Id*. Ultimately, the Court concluded that it would "not inflate this narrow testimony into a waiver as to all communications with [counsel]." *Id*.

Applying the relevant factors here, the Court concludes that Mr. Cassidy's clients did not voluntarily testify. First, as Defendants stress throughout their briefing, Plaintiffs' deposition questions explicitly prod at the substance of confidential attorney-client communications, and accordingly, the deposition transcripts contain numerous objections based on the attorney-client privilege. (*See* Docs. 23-5, 23-6, 23-8). This factor cuts against a finding of voluntary testimony. *See Liang*, 2015 WL 895884, at *7 (noting that voluntariness is less likely where deposition testimony contains objections based on the attorney-client privilege). Moreover, the relevant transcripts contain "mere responses to questions on cross-examination," *Avis Rent a Car Sys., LLC*, 2013 WL 3778922, at *6, as well as the "identif[ication] [of] the general subject matter of the communication." *Liang*, 2015 WL 895884, at *6. This is not enough to support a finding of waiver. Similarly, Ms. Nii's testimony that she was not involved with Mr. Cassidy's investigation of claims made against Mr. Murray does not trigger waiver. *See Yarberry*, 2013 WL 4476681, at *4 ("[T]he fact that an attorney has examined a matter or a release of the findings of a special report does not result in waiver of the privilege. As such, a mere acknowledgment that an attorney has looked into a particular question which does not divulge the subject matter of the attorney's whole line of inquiry does not waive attorney client privilege.") (citations omitted). Taking into account the weight of the above factors, the Court concludes that there is no basis to pierce attorney-client privilege.

*2. Defendants' Letters*

Next, the Court must decide whether the substance of Defendants' letters requires the Court to pierce the attorney-client privilege. As already discussed at length, Plaintiffs may access privileged material only if Mr. Cassidy's clients waived privilege. *See supra* at Section III (A). And, as the Court has already concluded that Mr. Cassidy's clients did not waive privilege, it follows that his letters cannot provide the basis for waiver. As such, Plaintiffs' attempt to discover privileged material under the waiver doctrine fails.

*3. Fundamental Fairness*

While the Court's analysis is complete as to the issue of waiver, the Court nevertheless deems it appropriate to briefly discuss the central policy of fairness in the context of waiver. *See Liang*, 2015 WL 895884, at *5 (noting that fairness is central to the question of waiver).

To start, the sheer volume of privileged material Plaintiffs request warrants healthy skepticism from the Court. It is not as if, for example, Plaintiffs seek several pertinent documents or discrete portions of privileged communications. To the contrary. Plaintiffs believe, based on the relevant transcripts, that they are entitled to discover an attorney's client files. Plaintiffs go even further—they wish to re-depose non-parties about their privileged communications with their lawyer. Fundamental fairness does not require such a result.

Furthermore, the Court does not view this case as presenting the type of "unusual situation[]" in which fairness mandates the disclosure of related privileged material. *See* Fed. R. Evid. 502 (a) advisory committee's note. *See also Skeddle*, 989 F. Supp. at 920 (declining to apply broad subject-matter waiver concerning the disclosure of "a handful of meetings [counsel] referred to in his testimony" because "[t]o use these limited, factual disclosures as a bootstrap to discover [counsel's] entire investigative file would run counter to the principles underlying the narrow

13

waiver of the attorney-client privilege recognized by the Sixth Circuit."). At most, the material Plaintiffs rely on reveal "limited, factual disclosures." *See id*. Without more, the Court will not pierce the privilege.

To borrow this Court's words in *Liang*, the Undersigned will "not inflate this narrow testimony into a waiver as to all communications with [counsel]" on the subject matter. *Liang*, 2015 WL 8958884, at *7. To broadly apply waiver under these circumstances would undermine the purpose that subject-matter waiver seeks to serve: fairness.

### B. The Crime-Fraud Exception

Plaintiffs, in their final bite at discovering privileged material, maintain that discovery is warranted under the crime-fraud exception. (Doc. 23-1 at 13–15). Because there is no allegation of crime or fraud in this case, Plaintiffs attempt to link the exception to Defendants' alleged tortious conduct—namely tortious interference with a contract. (*Id*. at 14). Specifically, Plaintiffs theorize that the alleged disclosure of "information regarding the claims of Ms. Jackson and Ms. Zombotti in furtherance of Ms. Nii's claims against the Murray Parties" resulted in Mr. Cassidy's "tortious[] interfere[nce] with the confidentiality provisions of the settlement agreements he negotiated on behalf of Ms. Jackson and Ms. Zombotti." (Doc. 23-1 at 14).

There is one critical error with Plaintiffs' theory: The crime-fraud exception attaches when the client and lawyer work in tandem to facilitate a wrongdoing. The Court is unaware of any case where allegations of the attorney's conduct alone shook privileged materials loose. Instead, a court will consider piercing the privilege only if the party seeking to discover privileged information provides evidence that a client sought the attorney's advice in furtherance of the alleged misconduct. *See Safety Today, Inc.*, 2013 WL 5597065, at *6 (noting that, for the crime-fraud exception to apply, the party seeking to pierce the privilege must present evidence (1) that the

client was engaged in or planning the misconduct when the attorney-client communications took place; and (2) that those communications were "intended by the client to facilitate or conceal the criminal or fraudulent activity") (quotation marks and citation omitted).

Applied here, Plaintiffs must allege that Ms. Jackson, Ms. Zombotti or Ms. Nii sought Mr. Cassidy's legal advice in furtherance of their alleged tortious conduct. Plaintiffs do not do this.

At most, Plaintiffs aver that Ms. Jackson and Ms. Zombotti "knew they had material confidentiality obligations under the Confidential Settlement Agreements" and that Mr. Cassidy, as their lawyer, violated the terms of those agreements. (Doc. 29 at 9). Even assuming this is true, Plaintiffs have not presented evidence that Mr. Cassidy's clients were engaged in (or planning) the alleged misconduct when the attorney-client communications took place or that the communications were "intended by the client[s] to facilitate or conceal" the activity. *See Safety Today, Inc.*, 2013 WL 5597065, at *6.

Plaintiffs attempt to make this exception apply by relying on case law in which courts have considered expanding the crime-fraud exception to cover misconduct other than a crime or fraud. (*See* Doc. 23-1 at 15 (citing *Horizon of Hope Ministry v. Clark Cnty.*, 115 F.R.D. 1, 5 (S.D. Ohio 1986); *Safety Today, Inc.*, 2013 WL 5597065)). But these cases only weaken Plaintiffs' argument. Indeed, in both cases, this Court required the party seeking to overcome the attorney-client privilege to provide evidence that the client's privileged communications were made in furtherance of the alleged misconduct. *See Safety Today, Inc.*, 2013 WL 5597065, at * 2 (requiring the privilege-challenger to present evidence that the client sought legal advice in furtherance of its alleged tortious conduct); *Horizon of Hope Ministry*, 115 F.R.D. at 5 (applying the crime-fraud exception where the party seeking the discovery made out a prima facie case that the communications were made in furtherance of a conspiracy to deprive plaintiffs of their civil rights).

15

As these cases show, regardless of whether the allegations concern criminal, fraudulent, or tortious conduct, the party seeking to overcome the privilege must show that the client sought legal advice in furtherance of the alleged conduct. Because Plaintiffs have not satisfied this standard, the crime-fraud exception does not apply. *See, e.g.*, *Metro Fin. Servs. Corp. v. Geller*, No. 2:13-cv-2867-SHL-DKV, 2015 WL 12910697, at *8 (W.D. Tenn. Feb. 24, 2015) (declining to apply the crime-fraud exception to tortious conduct and noting that the privileged documents would likely reveal attorney-client communications regarding a "legal course of action . . . rather than requests for assistance or advice from counsel on how to commit fraud"); *Nilavar v. Mercy Health Sys. W. Ohio*, No. 399-cv-612, 2004 WL 5345311, at *7–8 (S.D. Ohio Mar. 22, 2004) (declining to apply the crime-fraud exception to conduct other than a crime or fraud in part, because the connection between the alleged misconduct and the privileged material was "far too remote").

In sum, and without deciding the merits of Plaintiffs' tort claims, the Court finds that Plaintiffs have failed to satisfy their burden of showing that the privileged discovery at issue was made in furtherance of the alleged misconduct. Accordingly, Plaintiffs' final attempt to discover privileged material fails.

### IV. CONCLUSION

For these foregoing reasons, Plaintiffs' Motion (Doc. 23) is **DENIED**.

IT IS SO ORDERED.


Date: May 24, 2019
/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE