UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MURRAY ENERGY CORP., *et al.*,

    Plaintiffs,

v.

CASSIDY, COGAN, CHAPPELL
AND VOEGELIN, L.C., *et al.*,

    Defendants.

Case No. 2:18-cv-440
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on the *Objection to the Opinion and Order Denying the Motion to Compel* (ECF No. 36) filed by Plaintiffs Murray American Energy, Inc., Murray Energy Corp., the Ohio Valley Coal Company, and Robert E. Murray (collectively "Plaintiffs"). On February 19, 2019, Plaintiffs requested the Magistrate Judge to compel Defendants Cassidy, Cogan, Chappell and Voegelin, L.C., and Patrick Cassidy (collectively "Defendants") to produce privileged communications with the goal of establishing various state law violations. (*See* ECF No. 23.) On May 24, 2019, the Magistrate Judge denied that request (ECF No. 34) and Plaintiffs timely objected. For the following reasons, the Court **OVERRULES** Plaintiffs' *Objections* (ECF No. 36.) and **AFFIRMS** the Magistrate Judge's well-reasoned *Opinion* (ECF No. 34).

I.

Plaintiff Murray Energy Corporation is the nation's largest privately-owned coal company; Plaintiffs Murray American Energy, Inc. and the Ohio Valley Coal Company are two of its subsidiaries. Mr. Murray, who is also a plaintiff in this case, is the Chairman, President, and Chief Executive Officer of Murray Energy Corporation.

Defendant Cassidy, Cogan, Chappell and Voegelin, L.C. (the "Cassidy Firm") is a law firm that is partially owned and operated by Defendant Patrick Cassidy ("Mr. Cassidy"), who serves as the Cassidy Firm's president.

This case involves several non-parties, including: Denise Zombotti ("Ms. Zombotti"), Denise Jackson ("Ms. Jackson"), and Teela Nii ("Ms. Nii"), all of whom previously worked in some capacity for Plaintiffs and who are now clients of Defendants. These women each hired Defendants to represent them in hostile work environment lawsuits filed against Plaintiffs. In 2014, on behalf of Ms. Jackson and Ms. Zombotti, Defendants negotiated confidential settlement agreements with Plaintiffs. In 2016, on behalf of Ms. Nii, Defendants filed suit against Plaintiffs in the Belmont County Court of Common Pleas.

While representing Ms. Nii, Defendants sent Plaintiffs a letter on December 2, 2016, stating in relevant part: "[f]or my part, I am rather surprised that your clients have not taken any effective action to keep Mr. Murray from sexually harassing his female employees, particularly where they have had knowledge of prior claims made by other women against Mr. Murray (which we think would be admissible as relevant evidence in any claim brought by Ms. Nii)." (Pls.' Am. Compl., Ex. C [ECF No. 13-1].) On March 9, 2017, the Cassidy Firm sent Plaintiffs another letter, this time conveying the intent to discover information "about [Mr. Murray's] long-time treatment of women in the workplace, and maintenance over many years of a hostile work environment based on gender that all of his principal businesses either knew about, or should have known about." (*Id.*, Ex. E.) The March 9th letter also stated that the Cassidy Firm "believe[s] that [Mr. Murray] will be required to testify truthfully about former claims about him ... by former clients of mine (Ms. Jackson and Ms. Zombotti), notwithstanding Mr. Murray having entered into Confidential Settlement Agreements with each of them...." (*Id.*)

2

Based on the content of those letters, Plaintiffs believe that Defendants breached the confidential settlement agreements, particularly the provision to which Ms. Zombotti and Ms. Jackson each separately agreed to "keep all terms of [the] Agreement completely confidential" and further agreed not to "disclose any information concerning her claim or [the] Agreement to any person, including, but not limited to, any past, present, or prospective employee of the Releases...." (Pls.' Am. Compl., Exs. A, B [ECF No. 14].) In Plaintiffs' view, by mentioning Ms. Zombotti and Ms. Jackson's claims against Mr. Murray, Defendants intentionally placed privileged information at issue by using it "offensively in furtherance of Ms. Nii's claims." (Pls.' Mot. to Compel at 5 [ECF No. 15].) Therefore, Plaintiffs filed suit against Defendants in the Belmont County Court of Common Pleas on April 10, 2017. Defendants then removed the case to this Court.

Plaintiffs allege contract, quasi-contract, and legal malpractice claims, asserting that Defendants breached the terms of the confidential settlement agreements to advance interests of their current client, Ms. Nii. (*See* Pls.' Am. Compl.) To prosecute these allegations, Plaintiffs served broad discovery requests, which sought Defendants' confidential case files and information regarding the representation of their current and former clients. (*See* Pls.' Suppl. Br. at 4 [ECF No. 31].) In their supplemental briefs, Plaintiffs present the following "overarching issues" that they aim to discover:

(a) What was the current scope of information Defendants shared with Nii (beyond that currently known);

(b) What did Defendant Cassidy consider before sharing this information (if anything);

(c) Did he discuss (in advance) the disclosure with either Jackson or Zombotti and what was the substance of those discussions; and

(d) For what purpose(s) was the information shared and used by Defendants.

3

(*Id.*) To resolve these issues, Plaintiffs seek the following information from Defendants:

> (a) the dates of all communications with Nii, Jackson, Zombotti, and any employee of Defendants and Plaintiffs (whether verbal or written) from October 2014 to the present, and for each, who was present and/or participated;
>
> (b) the production of all documents or recordings "concerning any communications" referenced in those communications;
>
> (c) the production of all communications between Defendants and Jackson and those between Defendants and Zombotti, after they executed their confidential settlement agreements.

(*Id.* at 4, 8 – 9.) Defendants objected to most of these requests based on privilege. In response, Plaintiffs argued that Defendants waived privilege, and that even absent waiver, the crime-fraud exception to the attorney-client privilege compels disclosure of any privileged information.

Addressing the parties' arguments, the Magistrate Judge issued an Opinion and Order, denying Plaintiffs' Motion to Compel for the following reasons: (1) Plaintiffs failed to argue that the requested discovery is not subject to attorney-client privilege; (2) Defendants did not waive privilege; and (3) the crime-fraud exception does not apply.

## II.

Under Federal Rule of Civil Procedure 72(a), a party who timely objects to a magistrate judge's opinion and order may request the presiding district judge to reconsider that order. Fed. R. Civ. P. 72(a). The district judge shall consider the party's objections and shall modify or set aside any portion of the magistrate judge's order it finds to be clearly erroneous or contrary to law. *Id.*

## III.

Plaintiffs move this Court to reconsider the Magistrate Judge's Opinion and Order, which held that Plaintiffs cannot compel Defendants to produce information that is protected by attorney-client privilege. Plaintiffs argue that this conclusion is contrary to five areas of the law: (1)

professional ethical obligations, (2) the self-protection exemption in third-party legal malpractice claims, (3) the rule of necessity, (4) the crime-fraud exception, and (5) waiver. *See* Pls.' Obj. at 7–12 (ECF No. 36). The first area of the law, professional ethical obligations, does not implicate discovery or privilege. The next three are exceptions to the attorney-client privilege. If any of those exceptions apply, privilege does not attach to the communications in the first instance and are therefore excluded. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 937 N.E.2d 533, 543 (Ohio 2010). The last area of law, waiver, involves the client's relinquishment of the privilege after the privilege protections have already attached. *Id.*

### A. Professional Ethical Obligations

First, Plaintiffs contend that the Magistrate Judge's "decision is contrary to professional ethical obligations." Pl.'s Obj. at 7. In Plaintiffs' view, because lawyers representing parties who enter into settlement agreements are "ethically obligated to their clients to maintain the confidentiality of the agreement," Defendants' alleged failure to meet this ethical obligation requires the Court to compel discovery. *Id.* (quoting June 8, 2018 Opinion of the Ohio Board of Professional Conduct at 4)). Plaintiffs do not address, however, how allegedly breaching an ethical obligation implicates discovery. Defendants highlight this discrepancy, asserting that this Court has previously concluded "there is no evidence that an Ohio court would exclude certain communications from the ambit of the attorney-client privilege simply due to the lawyer's alleged misconduct or breach of an ethical duty." *TattleTale Alarm Sys. v. Calfee, Halter, & Griswold, LLP*, No. 2:10-cv-226, 2011 WL 382627, at *6 (S.D. Ohio Feb. 3, 2011). The Court agrees.

Moreover, even assuming confidentiality can implicate waiver, Plaintiffs have failed to show that Defendants violated the Ohio Rules of Professional Conduct.

5

Rule 1.8(b) prohibits a lawyer from using information related to representing a former client to the disadvantage of that client unless the client gives informed consent. Comment 5 to Rule 1.8 explains that this applies "whether or not the information is used to benefit either the lawyer or a third person, such as another client ...." But Comment 5 further states that this Rule "does not prohibit uses that do not disadvantage the client." This Comment then illustrates that "a lawyer who learns of a government agency's interpretation of a land-use regulation during the representation of one client may properly use that information to benefit other clients."

In sum, a violation can only occur if an attorney has disadvantaged a former client. Plaintiffs have not alleged that Defendants have used information to disadvantage Ms. Jackson or Ms. Zombotti, both of whom have offered their support to Defendants throughout this litigation. Accordingly, the Court rejects Plaintiffs' first argument.

## B. Exceptions to Attorney-Client Privilege

Next, Plaintiffs argue that the privileged information they seek is in fact discoverable because three exceptions to attorney-client privilege apply: the self-protection exemption, the crime-fraud exception, and the rule of necessity.

### 1. The Self-Protection Exemption

Plaintiffs argue that the Magistrate Judge's Opinion is contrary to Ohio law because Ohio allows third-parties to file legal malpractice claims, as Plaintiffs have done here against Defendants, which entitle Plaintiffs to compel privileged information from Defendants by way of the self-protection exemption. For two reasons, however, this argument fails. First, Ohio's courts have not expanded the self-protection exemption from legal malpractice claims to third-party malpractice claims; second, the self-protection exemption allows attorneys to disclose otherwise

privileged information but does not compel them to do so. *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, 127 Ohio St.3d 161, 937 N.E.2d 533, 544 (Ohio 2010) (the self-protection exemption is a common-law exception to attorney-client privilege that "*permits* an attorney to testify concerning attorney-client communications when necessary to establish a claim for legal fees on behalf of the attorney or to defendant against a charge of malpractice or other wrongdoing *in litigation between the attorney and the client*.") (emphasis added)). Therefore, because the self-protection exemption does not apply to this case, the Court rejects Plaintiffs' second argument.

### 2. The Crime-Fraud Exception

Next, Plaintiffs contend that the Magistrate Judge erred because the crime-fraud exception applies. The crime-fraud exception bars attorney-client privilege protections from attaching to attorney-client communications that are undertaken to commit or continue a crime or fraud. *State ex rel. Nix v. Cleveland*, 1998-Ohio-290, 83 Ohio St.3d 379, 384, 700 N.E.2d 12, 16. The Magistrate Judge concluded that this exception does not apply because Plaintiffs failed to provide evidence that Ms. Jackson, Ms. Zombotti, or Ms. Nii sought the advice of Defendants in furtherance of the alleged misconduct. As the Magistrate Judge thoroughly outlined, all relevant case law supports this threshold requirement, even those cases that Plaintiffs cite. *See Safety Today, Inc. v. Roy*, 2:12-cv-510, 2013 WL 5597065, at *2 (S.D. Ohio Oct. 11, 2013); *Horizon Hope Ministry*, 115 F.R.D. 1, 5 (S.D. Ohio 1986).

Despite this, Plaintiffs recycle their previous argument that this exception applies. In their view, Defendants' alleged disclosure of information regarding the representation of Ms. Jackson and Ms. Zombotti bolstered Ms. Nii's subsequent claims against Plaintiffs. As a result, Plaintiffs aver, Defendants and Ms. Nii worked together to tortiously interfere with the confidentiality

7

provisions of the settlement agreements that Defendants negotiated on behalf of Ms. Zombotti and Ms. Jackson.

"A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." *State ex rel. Nix*, 83 Ohio St.3d 379, 384. Plaintiffs do not offer any evidence that Defendants' former clients sought Defendants' advice in furtherance of unlawful actions. Instead, Plaintiffs declare that "Nii implicitly (if not explicitly) sanctioned [Defendants'] behavior, as it was part of her initial settlement demand as well as her lawsuit. In short they worked together to facilitate this wrongdoing." Pls.' Obj. to Op. and Order at 11. This blanket allegation does not demonstrate a factual basis for a showing of probable cause that Defendants and Ms. Nii communicated for the purpose of engaging in unlawful activity. Therefore, the Court rejects Plaintiffs' argument.

### 3. The Rule of Necessity

Plaintiffs also argue that the rule of necessity warrants disclosure. They assert that "Ohio's 'ultimate test' as to compelling privileged discovery is 'fashioned from a rule of necessity.'" Pls.' Obj. to Op. and Order at 12 (quoting *Fifth Third Bancorp. v. Certain Underwriters at Lloyd's*, 1:14-cv-869, 2017 WL 1881339, at *7 (S.D. Ohio May 9, 2017)). The rule of necessity prohibits a party who relies on privileged information to establish a claim from contemporaneously asserting privilege and withholding that otherwise unavailable information from an opposing party. *Fifth Third Bancorp.*, 2017 WL 1881339, at *8 (citing *Givaudon Flowers Corp.*, 127 Ohio St. 3d at 171 (recognizing "that the attorney-client privilege cannot at once be used as a shield and a sword.")). This rule essentially mirrors the self-protection exception. *See id.* at 7.

Plaintiffs' argument for applying the rule of necessity is as follows: Defendants have improperly used the attorney-client privilege as both a sword and shield. For a sword, Defendants attacked Plaintiffs with the prior claims of Ms. Jackson and Ms. Zombotti to support Ms. Nii's subsequent claims. For a shield, Defendants have protected all private communications with Ms. Nii, Ms. Jackson, and Ms. Zombotti by asserting attorney-client privilege.

Plaintiffs' argument fails because the information that Plaintiffs claim Defendants have used as a sword is not the same information that Defendants have used as a shield. As the Court explained in *Fifth Third Bancorp*, the rule of necessity can only apply when the party asserting privilege also attempts to use that privileged information to prosecute its claims. *Fifth Third Bancorp*, 2017 WL 1881339, at *7–8 ("[the plaintiff] cannot simultaneously rely on privileged information to prove its claims, while brandishing the 'shield' of privilege to prevent the [defendants] from obtaining the same information"). Defendants have asserted attorney-client privilege for all private communications with their clients. But nothing in the record indicates that Defendants have disclosed any of that information, nor used it to prosecute their clients' claims against Plaintiffs. While Defendants did use their knowledge of the prior claims against the Plaintiffs to support Ms. Nii's subsequent claims, that information was not privileged since Plaintiffs and Defendants were parties to both confidential settlement agreements. In other words, Plaintiffs already have all the information that Defendants allegedly used to support their claims. Accordingly, the rule of necessity does not apply.

**C. Waiver**

Finally, Plaintiffs argue that Defendants or their past and present clients waived attorney-client privilege. To start, Plaintiffs assert that Defendants, as counsel for Ms. Nii, waived attorney-client privileges of Ms. Nii, Ms. Jackson, and Ms. Zombotti by disclosing to Plaintiffs knowledge

9

that Defendants attained during their prior representation of those clients. This argument fails, however, because an attorney cannot waive attorney-client privilege on behalf of a client, absent express consent. *Maust v. Palmer*, 94 Ohio App.3d 764, 768, 641 N.E.2d 818, 821 (1994). Neither party contends that Ms. Jackson, Ms. Zombotti, or Ms. Nii expressly consented to Defendants waiving their attorney-client privileges. Accordingly, the Court rejects Plaintiffs' first argument.

Next, Plaintiffs assert that Ms. Jackson, Ms. Zombotti, and Ms. Nii waived their attorney-client privileges by voluntarily testifying about their private legal communications with Defendants. To waive the attorney-client privilege, one must voluntarily testify about the actual substance of the private communication with the attorney, such as the client's specific request to the attorney and pertinent information including the attorney's research in response to that request. *Liang v. AWG Remarketing, Inc.*, No. 2:14-cv-99, 2015 WL 8958884, at *6 (S.D. Ohio Dec. 16, 2015) (quotation marks and citation omitted).

Upon reviewing the deposition transcripts, the Court concludes that Ms. Jackson, Ms. Zombotti, and Ms. Nii did not voluntarily testify about their private communications with Defendants and therefore did not waive their attorney-client privileges. *See* Pls.'s Mot. to Compel, Ex. 3 [Jackson Dep.] at 30:7–20, 54:1–24; Ex. 4 [Zombotti Dep.] at 37:3–39:24; Ex. 6 [Nii Dep.] at 7:22–25, 25:1–16, 27:13–22, 28:1–24, 32:20–33:9, 56:1–21. All of these exchanges involved Plaintiffs' counsel asking Ms. Jackson, Ms. Zombotti, or Ms. Nii about their individual, private communications with Defendants. In response, these witnesses never identified more than the general subject of their privileged communications with Defendants and therefore never testified about the actual substance of those communications. *See Liang*, 2015 WL 89588884, at*6 (explaining that "simply identifying the general subject matter of the communication will not serve to waive the attorney-client privilege.") (citations omitted); *see also Avis Rent A Car System, LLC*

v. *City of Dayton, Ohio*, No. 3:12-cv-399, 2013 WL 3778922, at *6 (S.D. Ohio July 18, 2013) ("mere responses to questions on cross-examination cannot constitute a waiver of privilege, because such testimony is not voluntary within the purview of the statute.") (quotation marks and citations omitted). Therefore, Ms. Jackson, Ms. Zombotti, and Ms. Nii did not waive their attorney-client privileges. Accordingly, the Court rejects Plaintiffs' final argument.

**IV.**

In conclusion, the Court **OVERRULES** Plaintiffs' *Objections to the Magistrate Judge's Opinion and Order Denying the Motion to Compel* (ECF No. 36) and **ADOPTS** the Magistrate Judge's well-reasoned *Opinion and Order* (ECF No. 34).

**IT IS SO ORDERED.**

\_\_7-29-2019_____
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **CHIEF UNITED STATES DISTRICT JUDGE**